IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-399

 No. COA20-193

 Filed 3 August 2021

 Cumberland County, No. 18 CVD 2799

 ISSAC MUNOZ, Plaintiff,

 v.

 CASSANDRA MUNOZ, Defendant.

 Appeal by defendant from order entered 20 August 2019 by Judge Edward A.

 Pone in Cumberland County District Court. Heard in the Court of Appeals 10 June

 2021.

 Ward and Smith, P.A., by Christopher S. Edwards and Alex C. Dale, for
 plaintiff-appellee.

 Smith Debnam Narron Drake Saintsing & Myers, L.L.P., by Alicia Jurney, for
 defendant-appellant.

 ZACHARY, Judge.

¶1 Defendant-Mother Cassandra Munoz appeals from a permanent custody order

 awarding Plaintiff-Father Issac Munoz primary physical custody of their daughter,

 M.M.1 After careful review, we affirm.

 Background

¶2 Mother and Father grew up in California and were “high[-]school sweethearts,”

 1 Initials are used to protect the identity of the minor child.
 MUNOZ V. MUNOZ

 2021-NCCOA-399

 Opinion of the Court

 with Father graduating in 2010 and Mother graduating in 2012. They also married

 in 2012, and M.M. was born to the young couple in 2015. Mother was, and remains,

 a member of the United States Army. In 2016, the Army stationed Mother at Fort

 Bragg near Fayetteville, North Carolina, where she worked as a test measurement

 and diagnostic equipment maintenance support specialist.

¶3 When M.M. was born, both parents worked, but they preferred not to leave

 M.M. in daycare, so they relied on extended family to provide care for M.M. Father’s

 grandmother lived with them and cared for M.M. before and after the family moved

 to Fayetteville following Mother’s assignment to Fort Bragg. Mother’s father has also

 lived with the family and taken care of M.M. For most of M.M.’s life, Mother and

 Father have had live-in family support to care for her.

¶4 While living in Fayetteville in 2018, Mother and Father separated. At that

 time, Mother was anticipating deployment to Iraq for nine months.

¶5 On 16 April 2018, Father filed a complaint in Cumberland County District

 Court seeking divorce from bed and board, child custody, child support, and equitable

 distribution. On 19 April 2018, Father obtained an ex parte order restraining Mother

 from contacting him and awarding Father temporary custody of M.M., as well as

 exclusive use and possession of the marital residence. On 25 April 2018, Mother filed

 an emergency motion to set aside the ex parte order. The trial court heard the matter

 that day, and on 3 May 2018, the court entered an order allowing both parties to
 MUNOZ V. MUNOZ

 2021-NCCOA-399

 Opinion of the Court

 occupy the marital residence pending further proceedings.

¶6 On 30 April 2018, Mother filed her answer and counterclaims for child custody,

 child support, and equitable distribution. On 10 May 2018, the parties executed a

 Memorandum of Judgment regarding temporary child custody, which the trial court

 entered on 27 June 2018 (“the temporary custody order”). Pursuant to the temporary

 custody order, the parties agreed that it was in M.M.’s best interest for them to share

 joint legal custody, with Father having primary physical custody and Mother having

 secondary physical custody. The parties also agreed to permit Father to relocate to

 California with M.M.

¶7 On 15 May 2018, Mother filed a motion to amend the temporary custody order,

 which came on for hearing on 14 June 2018. That same day, Mother filed a motion to

 review the temporary custody order, in that her deployment had been delayed until

 July. On 29 June 2018, the trial court entered an order requiring the parties to keep

 M.M. in North Carolina until Mother deployed, but no later than 1 July 2018.

¶8 On 12 July 2018, Mother filed a motion to set aside the temporary custody

 order, alleging that, inter alia, she had been “informed that she [would] no longer [be]

 deployed.” Father and M.M. had already relocated to Victorville, California, where

 Father was employed as a supervisor for UPS.

¶9 Mother’s motion to set aside the temporary custody order came on for hearing

 on 8 October 2018, and on 15 November 2018, the trial court entered its order
 MUNOZ V. MUNOZ

 2021-NCCOA-399

 Opinion of the Court

 establishing a holiday visitation schedule and once again awarding primary physical

 custody to Father and secondary physical custody to Mother. On 29 November 2018,

 the parties executed a second Memorandum of Judgment, which the trial court

 entered on 30 November 2018, modifying the holiday visitation schedule set forth in

 the trial court’s order; a formal typed order was entered on 7 January 2019.

¶ 10 On 19 August 2019, the permanent custody matter came on for hearing in

 Cumberland County District Court before the Honorable Edward A. Pone. The next

 day, the trial court entered a permanent custody order awarding primary physical

 custody to Father and secondary physical custody to Mother. On 11 September 2019,

 Mother timely filed her notice of appeal.

 Discussion

¶ 11 On appeal, Mother argues that the trial court abused its discretion by (1)

 allowing Father to relocate to California with M.M. without considering the factors

 set forth in Ramirez-Barker v. Barker, 107 N.C. App. 71, 418 S.E.2d 675 (1992),

 disapproved of on other grounds by Pulliam v. Smith, 348 N.C. 616, 501 S.E.2d 898

 (1998); and (2) improperly considering her military-service obligations as the basis

 for determining that it was in M.M.’s best interest for Father to be awarded primary

 physical custody, in violation of N.C. Gen. Stat. § 50-13.2(f) (2019).

 I. Standard of Review

¶ 12 When this Court reviews a child custody order,
 MUNOZ V. MUNOZ

 2021-NCCOA-399

 Opinion of the Court

 the trial court’s findings of fact are conclusive on appeal if
 supported by substantial evidence, even if there is
 sufficient evidence to support contrary findings.
 Substantial evidence is such relevant evidence as a
 reasonable mind might accept as adequate to support a
 conclusion. Unchallenged findings of fact are binding on
 appeal. The trial court’s conclusions of law must be
 supported by adequate findings of fact. Absent an abuse of
 discretion, the trial court’s decision in matters of child
 custody should not be upset on appeal.

 Jonna v. Yaramada, 273 N.C. App. 93, 116, 848 S.E.2d 33, 51 (2020) (citation

 omitted). “Questions of statutory interpretation are questions of law,” which this

 Court reviews de novo. In re J.K., 253 N.C. App. 57, 60, 799 S.E.2d 439, 441 (2017)

 (citation omitted).

 II. Ramirez-Barker Factors

¶ 13 Mother first argues that the trial court abused its discretion by failing to give

 appropriate consideration to the Ramirez-Barker factors in determining whether

 relocation to California was in M.M.’s best interest. We disagree.

¶ 14 In Ramirez-Barker, this Court discussed the factors relevant to a trial court’s

 evaluation of a child’s best interest in a case involving the child’s potential relocation.

 In exercising its discretion in determining the best interest
 of the child in a relocation case, factors appropriately
 considered by the trial court include but are not limited to:
 the advantages of the relocation in terms of its capacity to
 improve the life of the child; the motives of the custodial
 parent in seeking the move; the likelihood that the
 custodial parent will comply with visitation orders when he
 or she is no longer subject to the jurisdiction of the courts
 MUNOZ V. MUNOZ

 2021-NCCOA-399

 Opinion of the Court

 of North Carolina; the integrity of the noncustodial parent
 in resisting the relocation; and the likelihood that a
 realistic visitation schedule can be arranged which will
 preserve and foster the parental relationship with the
 noncustodial parent.

 107 N.C. App. at 79–80, 418 S.E.2d at 680.

¶ 15 However, the Ramirez-Barker factors are not a mandatory checklist for trial

 courts; as always, the primary objective is the determination of the best interest of

 the child. Trial courts considering this issue are not required “to make explicit

 findings addressing each and every Ramirez-Barker factor.” Tuel v. Tuel, 270 N.C.

 App. 629, 632, 840 S.E.2d 917, 920 (2020). “[A]lthough the trial court may

 appropriately consider these factors, the court’s primary concern is the furtherance

 of the welfare and best interests of the child and [her] placement in the home

 environment that will be most conducive to the full development of [her] physical,

 mental and moral faculties.” Id. at 632–33, 840 S.E.2d at 920 (citation omitted). “All

 other factors,” including the visitation rights of the non-relocating parent, “will be

 deferred or subordinated to these considerations, and if the child’s welfare and best

 interests will be better promoted by granting permission to remove the child from the

 [s]tate, the court should not hesitate to do so.” Id. at 633, 840 S.E.2d at 920 (citation

 omitted).

¶ 16 Mother compares this case to Evans v. Evans, in which “the trial court found .

 . . that the proposed relocation would adversely affect the relationship between the
 MUNOZ V. MUNOZ

 2021-NCCOA-399

 Opinion of the Court

 father and his child[,]” but “made no other findings about the effect of the proposed

 relocation on the child.” 138 N.C. App. 135, 142, 530 S.E.2d 576, 580 (2000). We

 vacated and remanded the child custody order in that case because the trial court

 “fail[ed] to find facts so that this Court [could] determine that the order [wa]s

 adequately supported by competent evidence and the welfare of the child [wa]s

 subserved[.]” Id.

¶ 17 Mother argues that, like the trial court in Evans, the court here “failed to make

 required findings showing that it had given appropriate consideration to the relevant

 factors in determining whether [M.M.]’s relocation . . . was in her best interests.”

 Particularly, Mother maintains that the trial court did not consider “the advantages

 and disadvantages of the proposed relocation” for M.M., nor did it consider or make

 findings of fact regarding Mother’s relationship with M.M. However, careful review

 of the permanent custody order in this case reflects that the trial court made the

 requisite findings, and did not abuse its discretion.

¶ 18 First, we note that Mother only challenges two of the trial court’s findings of

 fact:

 39. [Mother] does not have a support system in close
 proximity to her and [M.M.] She is here alone.

 ....

 46. [Mother] remains in the military. She is here in the
 Fayetteville area all alone. While she has relatives in
 MUNOZ V. MUNOZ

 2021-NCCOA-399

 Opinion of the Court

 North Carolina, the closest ones are three to four hours
 away. They are not available at a moment’s notice as it
 would take them several hours to get here.

¶ 19 Mother maintains that, “[w]hile it is true that [her] family members do not live

 in Fayetteville, it is inaccurate to say that she does not have a support system and

 that she is alone.” Mother misstates the trial court’s findings of fact with respect to

 her support system. Rather than finding that “she does not have a support system”

 at all, the trial court merely found that she does not have a support system “in close

 proximity to her and [M.M.]” Indeed, the trial court found that M.M. “is fortunate to

 have such a great supportive family system on both her mother’s and father’s side of

 the family.”

¶ 20 Neither does Mother challenge the trial court’s finding of fact that she “remains

 here in Fayetteville/Ft. Bragg. Her closest relatives are three to four hours away in

 Ash[e]ville, North Carolina. She currently lives alone in the marital residence with

 the family dog.” In this, the trial court accurately summarized Mother’s testimony

 from the permanent custody hearing. The trial court’s unchallenged findings of fact

 are supported by competent evidence and binding on appeal, Jonna, 273 N.C. App. at

 116, 848 S.E.2d at 51, and support those findings that Mother challenges. Mother’s

 challenge to these findings of fact misinterprets the trial court’s order and is

 overruled.

¶ 21 Throughout its findings of fact, the trial court focused a great deal on each
 MUNOZ V. MUNOZ

 2021-NCCOA-399

 Opinion of the Court

 parent’s support systems in their respective home states. As the trial court explained,

 after M.M. was born both parents “soon realized they needed help with the minor

 child and did not want to put her in daycare. They were both young parents and had

 never had children before.” The trial court found that Father’s grandmother “has been

 an integral part of [M.M.]’s life since shortly after her birth” and was a “live-in care

 provider” for much of the first two years of her life. The trial court also found that

 Mother’s father came to assist the parents for approximately one year. After reciting

 this history, the trial court summarized its view of the parents’ need for a support

 system in raising M.M.: “The truth is, they have never parented [M.M.] completely

 on their own, either together or alone. They have always had family support. And,

 [M.M.] is fortunate to have such a great supportive family system on both her

 mother’s and father’s side of the family.”

¶ 22 The trial court then surveyed each of the parents’ current support systems in

 their respective states of residence. The court noted that Father lives in California

 with his grandmother and uncle; that his grandmother is once again a live-in care

 provider; and that M.M.’s bedroom has an extra bed so that Father’s grandmother

 can sleep in M.M.’s room “if she needs to.” By comparison, the trial court found that

 Mother lives alone in a home where M.M. has her own bedroom, but that her “closest

 relatives are three to four hours away[.]”

¶ 23 This case resembles Tuel in that the support system of each parent was
 MUNOZ V. MUNOZ

 2021-NCCOA-399

 Opinion of the Court

 similarly a significant factor for the trial court in that case. 270 N.C. App. at 633–34,

 840 S.E.2d at 921. Unlike Tuel, however, in which the trial court failed to “engage in

 any comparison” between each parent’s home state, “or provide any explanation as to

 why Indiana would otherwise provide the children with a more enriching

 environment” than North Carolina, id. at 633, 840 S.E.2d at 921, the trial court in

 the instant case did provide such an explanation.

¶ 24 The trial court found as fact that Father’s grandmother “once again is the live-

 in care provider[,] allowing [F]ather to work and keeping [M.M.] out of daycare and

 at home with a very familiar relative.” The court further found that Father’s

 grandmother “is healthy and able to care for” M.M., who is attending pre-

 kindergarten, swimming, and taekwondo classes in California. Father also located an

 elementary school for M.M. within walking distance of their home. Additionally, the

 trial court found that M.M. “has medical and dental providers there and is doing well

 in [F]ather’s care.”

¶ 25 In contrast, the trial court found that although Mother “is a good mother and

 loves her daughter very much[,]” because Mother does not have a similar familial

 support system nearby, M.M. “would be in daycare at least eleven hours a day during

 the week while in [M]other’s care[.]” The trial court concluded by contrasting Mother’s

 support system—with her closest relatives “three to four hours away” and “not

 available at a moment’s notice”—against Father’s support system, including his
 MUNOZ V. MUNOZ

 2021-NCCOA-399

 Opinion of the Court

 grandmother who “is one of the constants in [M.M.]’s life” and “is available for any

 and all emergencies” that may arise. These findings all reflect the trial court’s

 comparison of each parent’s home state and explanation that living with Father in

 California would provide M.M. “with a more enriching environment.” Id.

¶ 26 The trial court clearly considered each parent to be a loving and appropriate

 custodial parent for M.M. It appears that the trial court determined that Father’s

 more immediately proximate support system was a significant factor in deciding that

 M.M.’s “welfare and best interests w[ould] be better promoted” by permitting her to

 relocate from the state. Id. at 633, 840 S.E.2d at 920 (citation omitted). Given Tuel’s

 reminder that the Ramirez-Barker factors are not a mandatory checklist for a trial

 court, but rather guideposts for determining a minor child’s best interest—which is

 the true priority in any child custody proceeding—we cannot say that the trial court

 abused its discretion here. See Jonna, 273 N.C. App. at 116, 848 S.E.2d at 51.

¶ 27 Mother also argues that the “trial court’s findings of fact do not support its

 decision regarding the physical custody schedule” established in the permanent

 custody order. However, Mother does not cite any case law or statutory authority in

 support of her contention that the trial court abused its discretion in setting that

 schedule.

¶ 28 Rather, Mother asserts that at the permanent custody hearing, the trial court

 “refused to grant” her more than a week with M.M. before school started, despite her
 MUNOZ V. MUNOZ

 2021-NCCOA-399

 Opinion of the Court

 “begg[ing] for more time because she had not seen her daughter in six months.”

 Mother testified at the hearing that she had 40 days of leave saved. However,

 Mother’s argument on appeal fails to acknowledge that, at the hearing, she initially

 requested “at least” one week with M.M., which the trial court awarded her, before

 she asked for more. After the trial court explained that a week was “what [she] asked

 for,” Mother agreed.

¶ 29 Upon careful review of the record, and the arguments presented on appeal, we

 cannot say that Mother has shown that the trial court abused its discretion on this

 issue.

 III. N.C. Gen. Stat. § 50-13.2(f)

¶ 30 Mother also asserts that the trial court abused its discretion by considering her

 military service as the basis for determining that Father should be granted primary

 physical custody of M.M., in violation of N.C. Gen. Stat. § 50-13.2(f). This argument

 lacks merit.

¶ 31 Section 50-13.2(f) provides special protection for members of the armed

 services in custody matters:

 In a proceeding for custody of a minor child of a service
 member, a court may not consider a parent’s past
 deployment or possible future deployment as the only basis
 in determining the best interest of the child. The court may
 consider any significant impact on the best interest of the
 child regarding the parent’s past or possible future
 deployment.
 MUNOZ V. MUNOZ

 2021-NCCOA-399

 Opinion of the Court

 N.C. Gen. Stat. § 50-13.2(f).

¶ 32 “The primary rule of construction of a statute is to ascertain the intent of the

 legislature and to carry out such intention to the fullest extent.” Dickson v. Rucho,

 366 N.C. 332, 339, 737 S.E.2d 362, 368 (2013) (citation omitted). “When the language

 of a statute is clear and unambiguous, there is no room for judicial construction, and

 the courts must give it its plain and definite meaning.” Rosero v. Blake, 357 N.C. 193,

 206–07, 581 S.E.2d 41, 49 (2003).

¶ 33 Although Mother claims that § 50-13.2(f) prohibits the use of her possible

 future deployment “as a basis” for determining whether the proposed relocation was

 in M.M.’s best interest, the plain text of the statute belies her argument: “a court may

 not consider a parent’s . . . possible future deployment as the only basis in determining

 the best interest of the child.” N.C. Gen. Stat. § 50-13.2(f) (emphasis added). Section

 50-13.2(f) thus clearly contemplates a trial court’s consideration of a parent’s

 “possible future deployment” as one basis among others in determining a child’s best

 interest—so long as it is not the only basis. Id.

¶ 34 In the present case, it is evident that Mother’s possible future deployment

 played a role in the procedural posture leading up to the permanent custody order

 from which Mother appeals. Mother’s possible future deployment was certainly a

 factor in the parties’ decision-making, until Mother was informed that she would not

 be deployed.
 MUNOZ V. MUNOZ

 2021-NCCOA-399

 Opinion of the Court

¶ 35 It is less clear, however, that Mother’s possible future deployment played a

 significant role in the trial court’s determination that relocation was in M.M.’s best

 interest. Mother calls our attention to several references in the trial court’s order to

 her military service, but most of these merely provide context for the parties’

 relationship and the procedural history of the case. The trial court’s unchallenged

 findings of fact state that Mother “was and remains a member of the United States

 Army”; that Mother enlisted when she was 17 years old; that Mother “was scheduled

 to deploy at the time of the filing of the action”; that although “she ultimately did not

 deploy, she remains in the Army and is subject to deployment or reassignment at any

 time”; and that “Mother is in good standing with the military and plans to remain in

 at this time.”

¶ 36 Only one of these findings references Mother’s possible future deployment, and

 the extent to which that possibility affected the trial court’s determination—if at all—

 is unclear. Considering the trial court’s predominant focus on the parents’ respective

 support systems, as previously discussed, we are satisfied that Mother’s possible

 future deployment was not “the only basis in determining the best interest” of M.M.

 Id. Mother’s argument is overruled.

 Conclusion

¶ 37 For the foregoing reasons, the trial court did not abuse its discretion in

 determining that relocation to California was in M.M.’s best interest, nor did it violate
 MUNOZ V. MUNOZ

 2021-NCCOA-399

 Opinion of the Court

N.C. Gen. Stat. § 50-13.2(f) in its order. The permanent custody order is affirmed.

 AFFIRMED.

 Judges DIETZ and WOOD concur.